Filed 5/10/16  In re Z.J. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Z.J., a Person Coming Under the Juvenile Court Law. | H042805 (Santa Cruz County Super. Ct. No. DP002364) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. T.C., Defendant and Appellant. | |

T.C. is the mother of K.C., age nine, and Z.J., age seven.  Both children are dependents of the juvenile court.  In this appeal, Mother asserts that the juvenile court erred in terminating her parental rights as to Z.J., and ordering adoption as the permanent plan.  In addition, Mother argues that the court erred in denying her request for a continuance of the Welfare and Institutions Code section 366.26[1] hearing, because it violated her due process rights, and it was an abuse of discretion.

---

[1] All further statutory references are to the Welfare and Institutions Code.

The juvenile court case involving K.C. and Z.J. has been the subject of numerous appeals in this court, and the underlying facts are stated in this court's opinions in prior appeals. To summarize, Mother had two children, K.C. and her brother Z.J., of whom she informally shared custody with their father. The Santa Cruz County Human Services Department (Department) initiated dependency proceedings after Z.J. suffered severe brain injuries that doctors considered non-accidental. The Department eventually concluded that the injuries had been sustained while Z.J. was in the home of Mother, but were likely caused by a third party and not either of the parents.

On April 7, 2011, the juvenile court sustained original petitions as to both children under section 300. It placed Z.J. with the children's paternal grandmother (Grandmother), while placing K.C. with Father under the supervision of the Department. After a series of events, the juvenile court removed K.C. from Father, and placed her with Grandmother. The children have been living with Grandmother, who was appointed their guardian in 2013.

Mother failed to reunify with Z.J., and the matter proceeded to a section 366.26 hearing to terminate her parental rights. In preparation of the June 18, 2015 hearing, the Department filed a report regarding Z.J. recommending termination of Mother's parental rights, and adoption by his Grandmother. At the June 18, 2015 hearing, Mother appeared telephonically, expressing her concern that if Z.J. were adopted, the Grandmother would not allow her to see him. The court set the matter for a settlement conference and contested section 366.26 hearing on August 3, 2015.

At the beginning of the contested section 366.26 hearing on August 3, 2015, Mother's counsel told the court that Mother was not present in person, but wished to appear telephonically. However, the court's telephone system for appearance was not

---

[2] Mother's motion to strike portions of the Department's brief is denied.

working that day.  Mother's counsel requested a continuance of the contested hearing because Mother was unable to appear telephonically.  The court denied the request.

The court proceeded with the contested hearing and after a stipulation of the parties, considered and admitted into evidence Mother's unsworn statement that she had submitted in preparation for the hearing.  In the statement, Mother said that she had a very strong and special bond with Z.J. that was different than the bond he had with his Grandmother.  She said that Z.J. was happy and content with her, and that she was one of the only people who could understand, and handle him.  She had been involved with his school, his physical therapy, and his behavioral specialists.  Mother said that Z.J. knew that she loved him and that she was working on providing a safe and loving home for him.

At the conclusion of the hearing, the court adopted the Department's recommendation in the section 366.26 report, found that Z.J. was adoptable, and that the beneficial parent-child relationship exception to adoption had not been established.  The court terminated Mother's parental rights.

On September 21, 2015, the Mother filed a timely notice of appeal contesting the termination of her parental rights to her son, Z.J.

### DISCUSSION

Mother argues that the court erred when it found that the beneficial parent-child relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) did not apply.  In addition, Mother asserts that the court's denial of her request for a continuance violated her due process rights and was an abuse of discretion.

***Beneficial Parent-Child Relationship Exception***

Once a dependency case has proceeded to the point of a section 366.26 hearing, a juvenile court has limited choices.  If the court determines by clear and convincing evidence that it is likely that the child will be adopted, the court is required to terminate

3

parental rights and order the dependent child placed for adoption unless a statutory exception applies. (§ 366.26, subd. (c)(1).) "The Legislature has thus determined that, where possible, adoption is the first choice." (*In re Celine R*. (2003) 31 Cal.4th 45, 53.) "The specified statutory circumstances—actually, *exceptions* to the general rule that the court must choose adoption where possible—'must be considered in view of the legislative preference for adoption when reunification efforts have failed.' [Citation.] . . . The statutory exceptions merely permit the court, in *exceptional* circumstances [citation], to choose an option other than the norm, which remains adoption." (*Ibid.*)

Section 366.26, subdivision (c)(1)(B), contains a number of exceptions to adoption, including the beneficial parent-child relationship exception (§ 366.26, subd. (c)(1)(B)(i)). That exception applies where "[t]he court finds a compelling reason for determining that termination would be detrimental to the child [because] [t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (*Ibid.*) A parent bears the burden of proving the beneficial parent-child relationship exception applies. (*In re Mary G.* (2007) 151 Cal.App.4th 184, 207.) The parent-child relationship must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) "In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Ibid*.) "[T]he exception does not permit a parent who has failed to reunify with an adoptable child to derail an adoption merely by showing the child would derive some benefit from continuing a relationship maintained

4

during periods of visitation with the parent." (*In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1348.)

On appeal from a court order terminating parental rights following the court's determination that the beneficial parent-child relationship exception does not apply, we review the juvenile court's findings of fact under a substantial evidence standard and its discretionary decision regarding the existence of a compelling reason under an abuse of discretion standard. (See *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.) "Since the proponent of the exception bears the burden of producing evidence of the existence of a beneficial parental . . . relationship, which is a factual issue, the substantial evidence standard of review is the appropriate one to apply to this component of the juvenile court's determination." (*Id.* at p. 1314.)

In contrast, a juvenile court's determination whether there is a compelling reason not to terminate parental rights based on a beneficial parent-child relationship is "a 'quintessentially' discretionary decision, which calls for the juvenile court to determine the importance of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 951.)

"Because this component of the juvenile court's decision is discretionary, the abuse of discretion standard of review applies." (*In re Bailey J., supra*, 189 Cal.App.4th at p. 1315; see *In re C.B.* (2010) 190 Cal.App.4th 102, 123.) " ' ["]The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citation.]" (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319.) "The abuse-of-discretion standard requires us to uphold a ruling which a reasonable judge might have made, even though we would not have ruled the same and a contrary ruling would also be

5

sustainable. We cannot substitute our own judgment. [Citations.]" (*People v. Woods* (1993) 12 Cal.App.4th 1139, 1153.) Otherwise stated, "[w]hen applying the differential abuse of discretion standard, 'the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' [Citations]" (*In re C.B., supra*, 190 Cal.App.4th 102, 123.)

Here, Mother fails to show that the court abused its discretion in determining that her relationship with Z.J. did not promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H., supra*, 27 Cal.App.4th at p. 575.) In evaluating whether the beneficial parent-child relationship exception applied, the court based its discretion on the fact that Z.J. had been with his Grandmother since he was released from the hospital on December 12, 2012 following his suffering non-accidental traumatic brain injuries. The court noted that although Mother did have a close, loving relationship with Z.J., and had maintained visitation with him, she had not established that that her relationship with him outweighed the benefit of adoption. The court found that while Mother had a friendly, fun relationship with Z.J., she had not established that the relationship had risen to the level of her taking care of Z.J. as a supportive day-to-day parent. The court ultimately made clear that it could not find that the mother-child relationship was so good that it would be in Z.J.'s best interest to have that legal relationship continue rather than proceed with adoption.

The record does not disclose that the court applied an incorrect standard in deciding whether the beneficial parent-child relationship exception was established. Mother fails to show that the juvenile court acted arbitrarily and beyond the bounds of reason in finding that exception was inapplicable.

***Denial of Mother's Request for a Continuance***

Mother argues that the court erred in denying her request for a continuance of the section 366.26 hearing because the denial violated her constitutional rights, and in the alternative, the denial was an abuse of discretion.

At the contested section 366.26 hearing on August 3, 2015, although notified of the court date, Mother was not present, having moved to Louisiana in February of 2015. Mother's counsel represented to the court that Mother intended to appear telephonically as she had at the last court date, but that the telephone system for the court was not working the day of the hearing. Counsel requested a continuance of the hearing due to the unavailability of the telephone system, but the court denied the request, stating "[b]ecause this is a contested hearing, a telephone appearance by mother would not be an appropriate way for the Court to receive testimony from the mother. And so the fact that the Court's telephonic system is not working, is not good cause for the continuance. [¶] The Court is concerned about many issues with respect to a witness testifying via telephone."

> ***Due Process Rights***

Mother asserts that the court's denial of a continuance in this case violated her due process rights under the Fourteenth Amendment. (*In re Matthew P.* (1999) 71 Cal.App.4th 841, 849.) "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333.)

Here, the record demonstrates that Mother received notice of the time and place of the contested section 366.26 hearing, and knew that the purpose of the hearing was to consider termination of her parental rights as to Z.J. Despite the fact that Mother had appeared telephonically in the past, she had no legal right to do so, and was previously allowed to at the discretion of the court. Indeed, California Rules of Court Rule 3.670

7

provides for telephonic appearances under some instances for civil cases, unlawful detainer and probate proceedings; juvenile cases are not included. Moreover, subdivision (e)(1)(A) of the California Rules of Court, rule 3.670 provides that a telephonic appearance may be acceptable at a hearing that will include the testimony of witnesses when the court deems such appearance would be appropriate. Here, the court specifically found that the nature of the proceedings was such that a telephonic appearance by Mother was not appropriate. Here, Mother had notice of the date, time and location of the section 366.26 hearing, and had an opportunity to be heard. Mother chose to not personally attend the hearing, and instead assumed she would be permitted to appear telephonically. Mother's incorrect assumption, and the court's refusal to grant a continuance because of that assumption, does not amount to a denial of her due process rights under the Fourteenth Amendment.

### *Abuse of Discretion*

In addition to arguing that the court violated her due process rights by denying her request for a continuance, Mother also asserts in the alternative, that the court abused its discretion.

"The juvenile court has broad discretion in determining whether to grant a continuance. (§ 352, subd. (a); *In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1186–1187.) As a reviewing court, we can reverse an order denying a continuance 'only upon a showing of an abuse of discretion.' (*In re Gerald J., supra,* at p. 1187.)" (*In re V.V.* (2010) 188 Cal.App.4th 392, 399.)

Under section 352, subdivision (a), a juvenile court may continue a section 366.26 hearing "beyond the time limit within which the hearing is otherwise required to be held." But section 352, subdivision (a), prohibits any continuance that "is contrary to the interest of the minor" and requires the court to "give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable

8

environments, and the damage to a minor of prolonged temporary placements." It allows a continuance to be granted "only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (§ 352, subd. (a).) "Whenever any continuance is granted, the facts proven which require the continuance shall be entered upon the minutes of the court." (*Ibid*.) Ordinarily, a motion for continuance must be in writing but the court may entertain an oral motion if there is good cause. (*Ibid*.)

Here, the court acted within its discretion in denying a continuance of the section 366.26 hearing so that Mother could appear telephonically at some date in the future. There was no good cause to continue the hearing based on Mother's false assumption that she could appear telephonically. The court did not act in an arbitrary or capricious manner in denying Mother's request in this case.

**DISPOSITION**

The order terminating Mother's parental rights as to Z.J. is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
MÁRQUEZ, J.

10